IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Johnnie Gathers, | ) CIVIL ACTION NO. 9:09-0035-HMH-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Lt. Brayboy, Sgt. Heyward, Sgt Jones and Officer Morris, all sued in their individual capacity, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on July 13, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 15, 2009, advising Plaintiff of the importance of a motion summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on July 29, 2009.

Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)



## Background and Evidence

Plaintiff alleges in his verified complaint[2] that on December 22, 2008, he was walking with the rest of his "unit" to the cafeteria when he was told by the Defendant Brayboy that he could not go to the cafeteria because he was to get a tray in the unit. Plaintiff alleges that he told Brayboy that he had gotten a tray in the unit, but that he did not eat it because it was cold. Plaintiff alleges that Brayboy told him that he could not go to either the cafeteria or to see the Warden, to which Plaintiff responded "Okay just keep the dam[n] tray f*** it you can have it." Plaintiff alleges that the Defendant Heyward then started "screaming" that Plaintiff was not to talk to his supervisor like that.

Plaintiff alleges that Brayboy then told Heyward to "gas" him, referring to Plaintiff as a "n*****", and for Heyward to take Plaintiff to the lockup. Plaintiff alleges that he said "for what", but that Heyward grabbed his arm and as they started to walk Heyward slammed him to the ground "on my face". Plaintiff alleges that Heyward told him to put his hands behind his back, but that Heyward was on top of him laying on his arm. Plaintiff alleges that the Defendant Jones then arrived and told Heyward to get up, at which time Heyward "got up off me and stomped me in my back and he put handcuff on me very tight."

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Plaintiff alleges that Brayboy then instructed the officers to take Plaintiff to medical, where Plaintiff was seen by "three nurses". Plaintiff alleges that he was "in a lot of pain." Plaintiff alleges that his blood pressure was up, and that after it had come back down he was taken to a holding cell for about two hours. Plaintiff seeks monetary damages. See generally Verified Complaint.

In support of summary judgment in the case, the Defendant Heyward has submitted an affidavit wherein he attests that he is a Sergeant with the South Carolina Department of Corrections, assigned to the Evans Correctional Institution (where Plaintiff is housed). Heyward attests that on December 22, 2008 he was assisting the Defendant Morris with transporting Cherokee Unit inmates to breakfast when the Defendant Brayboy (a Lieutenant) directed Plaintiff to return to his unit. Heyward attests that Plaintiff refused Brayboy's order, and became verbally combative and disruptive. Heyward attests that, due to Plaintiff's noncompliance, Brayboy instructed him to escort Plaintiff off of the yard. Heyward attests that, as he attempted to do so, Plaintiff continued to be verbally combative, belligerent, and disruptive and refused his [Heyward] directive to be escorted off the yard and instead attempted to head in the opposite direction toward Brayboy. Heyward attests that in an attempt to control Plaintiff and to prevent further disruption, he placed Plaintiff on the ground and restrained him with handcuffs. Heyward has attached a copy of the Incident Report with respect to this matter to his affidavit as Exhibit A, and a copy of the Use of Force report as Exhibit B.

Heyward attests that he then escorted Plaintiff to medical, where he was examined and later escorted to a holding cell. Heyward attests that Plaintiff was charged with Offense Code 825: refusing or failing to obey orders, non-compliance with a legitimate order. See generally

- 3 -



Heyward Affidavit with attached exhibits. <u>See</u> <u>also</u> attached copies of Plaintiff's Disciplinary Hearing record.

The Defendant Clyde Morris has submitted an affidavit wherein he attests that he is an officer at the Evan Correctional Institution. Morris attests that on December 22, 2008, Plaintiff was to receive a breakfast tray in his cell, and was not allowed to travel with the rest of the Cherokee Unit to the cafeteria area for breakfast. Morris attests that Plaintiff did in fact receive a breakfast tray, as well as the breakfast tray of another inmate, meaning that he had actually received two breakfast trays in his cell that morning, both containing pancakes. Morris attests that he then observed Plaintiff, after having eaten two breakfast servings in his cell, attempting to go to the cafeteria with the rest of his unit to obtain a third serving of pancakes. Morris attests that because Plaintiff was not authorized to accompany his unit to the cafeteria, he called his superior (Brayboy) and told him that Plaintiff was attempting to "sneak to the cafeteria." Morris attests that he was not in a position to view any additional events which occurred that morning, but that he has had the opportunity to observe Plaintiff on multiple occasions since the alleged incident complained of in the complaint, and that he has not observed any conduct on Plaintiff's part that would indicate that Plaintiff was physically injured on December 22, 2008. <u>See</u> <u>generally</u> Morris Affidavit.

Finally, the Defendant Ronald Brayboy has submitted an Affidavit wherein he attests that he is a Lieutenant at the Evans Correctional Institution. Brayboy attests that on December 22, 2008 he received a call from the Defendant Morris who was in the process of escorting the Cherokee Unit to the cafeteria for breakfast. Morris stated that Plaintiff had received a breakfast tray in his cell, but was proceeding to the cafeteria in an attempt to eat a second breakfast with his unit. Brayboy attests that he responded to the yard area and informed Plaintiff that he was to return to the



Cherokee Unit, at which time Plaintiff became verbally combative, took a defensive stance, and refused to obey his direct order. Brayboy attests that he then instructed the Defendant Heyward to remove Plaintiff from the yard, as it was obvious to him that, because there were several inmates on the yard during this time, the disruption being created by Plaintiff could quickly escalate into a very serious situation. Brayboy attests that he observed Heyward attempt to escort Plaintiff from the yard, but that Plaintiff continued to be verbally combative, disruptive, and belligerent and to disobey the lawful orders of both himself as well as Heyward by refusing to be escorted and attempting to walk in his [Brayboy's] direction. Brayboy attests that, in an effort to control Plaintiff and maintain order within the facility, Heyward placed Plaintiff on the ground and restrained him with handcuffs. Once restrained, Plaintiff was escorted by Heyward and the Defendant Jones to medical, following which Plaintiff was escorted to a holding cell. Brayboy attests that it is his understanding that the Plaintiff was returned to his unit shortly thereafter. Brayboy attests that the amount of force used by Heyward was appropriate and was used only in a good faith effort to maintain order, gain the compliance of the inmate, and maintain the safety of the Plaintiff, the other inmates, and correctional officers. See generally Brayboy Affidavit.

The Defendants have also attached a copy of a report from medical showing that an examination was performed on Plaintiff's shoulder on January 7, 2009, with no "acute process" or fractures being identified, with the joint spaces appearing to be well-maintained. See Medical Exhibit.

Plaintiff has not submitted any exhibits with his memorandum in opposition to summary judgment. However, as attachments to a previous court filing (Docket No. 29), Plaintiff did submit a "Declaration" with some attached exhibits which have been considered by the Court.



In his declaration, Plaintiff repeats the allegations of his complaint and notes that following this incident he was scheduled for an x-ray on January 5, 2009 for his arm. Plaintiff alleges in his declaration that the Defendants used "unnecessary excessive force . . . ." Attached to Plaintiff's declaration are copies of the Incident Report and Disciplinary Hearing record, including copies of his grievances, as well as a copy of what appears to be the SCDC's policy concerning the disciplinary process.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

When reviewing allegations of excessive force, the Court must consider 1) the need



for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).

Here, even Plaintiff concedes in the allegations of his verified complaint that at the time of the incident in question, he at least initially refused to obey Brayboy's order to return to his unit and cursed at him. Plaintiff has also offered no evidence to dispute Brayboy's sworn statement that during this dispute there were several other inmates on the yard, creating concerns that the dispute could quickly escalate into a very serious situation. Further, even under Plaintiff's version of this event, the physical contact and confrontation between Plaintiff and Heyward was only minimal, lasting at most a few moments. Hence, the evidence clearly shows grounds for the application of force, and that the prison guards could have reasonably perceived a threat to both themselves and to the Plaintiff himself. The mere fact that Plaintiff was physically restrained does not mean that his constitutional rights were violated, as Plaintiff has presented no evidence (other



- 7 -

than the general and conclusory allegations of his complaint) that the amount of force used was excessive. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; see also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm].[3]

Finally, no evidence has been presented sufficient to give rise to a genuine issue of fact as to whether Plaintiff suffered any significant or serious injury as a result of this incident. While Plaintiff alleges in his complaint that, when he was on the ground, Heyward was laying on his arm, that when he got to medical his blood pressure was elevated, and that he was "in a lot of pain", he has submitted no medical evidence to show that he suffered any significant injury as a

---

[3]Plaintiff makes a brief reference to "gas" in his complaint, although it does not appear that Plaintiff is actually contending that any gas was used on him. Rather, the injury Plaintiff complains of is an alleged injury to his arm. See Plaintiff's "Declaration". While the Report on the Use of Force form completed as a result of this incident (Heyward Affidavit, Exhibit B) originally had some notation about a pepper spray canister, this notation apparently refers to a "Sgt. Williamson", who is not alleged to be involved in this incident, and this notation was stricken out of the Report on the Use of Force. In any event, even if some form of chemical munition was used, no evidence has been submitted by any party to show an excessive use of any such material, and the use mace, tear gas or pepper spray by prison officials is not in and of itself a per se violation of a prisoner's constitutional rights when used appropriately. Cf. Williams, 77 F.3d at 763; Norris v. District of Columbia, 614 F.Supp. 294 (D.D.C. 1985), aff'd, 787 F.2d 675 (D.C.Cir. 1986); Peterson v. Davis, 551 F.Supp. 137 (D.Md. 1982), aff'd without op., 729 F.2d 1453 (4th Cir. 1984); O'Connor v. Keller, 510 F.Supp. 1359 (D.Md. 1981); Brock v. Robinson, 378 F.Supp. 1263 (W.D.Pa. 1974); Collins v. Schoonfield, 363 F.Supp. 1152 (D.Md. 1973); Davis v. United States, 316 F.Supp. 80 (E.D.Mo. 1970), aff'd 439 F.2d 1118 (8th Cir. 1971); Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422 **2-3 (4th Cir. March 21, 1996).



result of this incident, while the Defendants have submitted a copy of a medical record from Dr. Allen Kantsiper which shows no injury to Plaintiff's left arm or shoulder in the weeks following this incident. <u>Defendant's Exhibit</u> 4.[4] Therefore, there is simply no evidence to support a finding that Plaintiff suffered any significant injury as a result of Heyward's conduct, or that Heyward or anyone else acted with a sufficiently culpable state of mind to engage in conduct harmful to the Plaintiff. <u>See</u> <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment]; <u>Hudson</u>, 503 U.S. at 7. [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; <u>Norman</u>, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury <u>de</u> <u>minimis</u>]; <u>Thaddeus-X v. Wodniak</u>, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than <u>de</u> <u>minimis</u> injury]; <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than <u>de</u> <u>minimis</u> physical injury, Plaintiff cannot maintain his claim]; <u>see</u> <u>also</u> <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

---

[4]While defense counsel argues in his brief that "a review of the Plaintiff's institutional medical records as well as the radiological notations of Dr. Allen Kantsiper, reveal that [Plaintiff] made complaints of shoulder pain which he related to the incident of December 22, 2008", no other medical records other than the dictation note of January 9, 2009 have been presented to the Court for review. Therefore, the undersigned has not considered counsel's statement with respect to what Plaintiff's "institutional medical records" show for purposes of issuing this Report and Recommendation. <u>See</u> <u>Estrella v. Bryant</u>, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact]; <u>Gans v. Gray</u>, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; *cf.* <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence].



In sum, the evidence does not show excessive force was used under the circumstances in this case. While Plaintiff may conceivably have a state law claim arising from this incident, his assertion of a federal constitutional claim under § 1983 is without merit and should be dismissed. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed. See Farmer v. Brennen, 511 U.S. at 837 [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); see also Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

                                                Bristow Marchant
                                                United States Magistrate Judge

August 11, 2009
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

